23-384, Goldstein v. PSC and CUNY. Good morning, Your Honors, and may it please the Court, my name is Nathan McGrath and I represent the appellants in this matter. I've asked for three minutes of rebuttal time. You have it reserved. Thank you, Your Honor. Current events make it more important by the day for my clients to be able to separate from the union. The union has taken positions on political and collective bargaining issues they disagree with, including, among other things, identifying Israel as an apartheid state. My clients have religious and moral convictions about the state of Israel, and the union's position on this is unacceptable to them. But New York law requires them to accept the union's representation and to speak through them. Is the fact that your clients' objections are religious and moral, as you just said, relevant to the First Amendment inquiry, or would the same principle apply regardless of the basis for objection? Your Honor, I believe that the same principle would apply regardless of whether the objection is religious or moral. I think that the facts in this case really highlight why it's such a problem for state law to require my clients to be associated with the union and to have them, basically their speech go through the union, the union to speak for them. But, so that's true regardless of the nature of the speech and the nature of the objection? Well that's correct, and I think that what it gets to is in Janus, they, the court there said there is no distinction between collective bargaining speech and political speech in that they all merge together as one. And so there's no limiting principle then? Anyone can raise the claim that your clients are raising and therefore become their own bargaining unit? Well, Your Honor, I mean, they could do several things. My clients are just asking to step outside the bargaining unit. So PSC says they represent 30,000 employees. My clients just want to be the six that remove themselves from the bargaining unit and aren't spoken for. And then bargain for themselves? Well, they can either bargain for themselves or they believe that it's better not to be spoken for rather than be spoken for by this union. And so they would accept the fact that PSC could be bargaining with the union and the union could perhaps still be the exclusive representative of the others who choose to be in that bargaining unit. And then they can negotiate with CUNY as they want. Or CUNY, you know, that's kind of the principle in Knight that they can't force CUNY to talk with them. So CUNY can deal with it. Counsel, didn't the Supreme Court in Minnesota at Knight deal with this issue? And in Janus specifically say that that was not changed. Then hasn't the First Circuit, and even in the opinion of Van Suter, reiterated that. So aren't you asking us to go against what the Supreme Court has already said? Now, maybe someday they'll go with you, but if they haven't, aren't we bound to follow the line of the throne? I'm sorry, Your Honor, I didn't catch all of your question. I think generally it was going towards the Supreme Court in Janus not overruling Knight. Is that correct? Specifically saying that that remained, and other circuits that continue to talk about it as well. Okay, Your Honor. I think that in Janus what they were saying when they said they weren't, you know, basically Janus cabined its decision to fair share fees. I think that's the point of what they were saying there in footnote 27 where they said we're not disturbing anything else. They were actually citing to the dissent where the dissent was talking about kind of the parade of horribles, all the things that were going to go wrong and all the different things that we're going to have to change about collective bargaining. And I think the Supreme Court in Janus, what it was doing was saying, no, we haven't touched that. We've dealt with a limited topic here, which was the constitutionality of fair share fees, and we haven't gone beyond that. Right, but wasn't the point of saying it separate to say that you can separate it out from exclusive bargaining because otherwise you might see this as collapsing the collective bargaining system, creating, allowing labor unrest or labor, non-labor peace I suppose is the better phrase. Wasn't the whole logic of the analysis that that can remain but fees can be separated out? I do believe that they were making the point that we can separate out the fair share fee portion. But I think, again, going back to their decision, they were also saying we're basically taking down the false line drawing that Abboud said could be happening between collective bargaining activity and political activity. We're saying the speech is all one. And I think because Mr. Janus did not bring the challenge to exclusive representation at that point, they weren't saying, and we're also going to go to exclusive representation where the same logic would apply. The exclusive representative is speaking in a political way when they petition CUNY, for instance. They're speaking on matters of public concern. And so that speech is political. And I think what Janus does is support that line of thought and theory and extends it to that and shows why exclusive representation also is unconstitutional. Counsel. Counsel. It may be right that that's what the Supreme Court has in mind, but they didn't hold it. And aren't we bound to follow what the Supreme Court has said before until they actually change? And Minnesota's night is still the law. So perhaps you can win at this, Supreme Court. But until that, we've been told a number of times we must stay with what they've done. Your Honor, I think that you can rule today for my clients and not even have to touch night, because night didn't concern topics of compelled speech and association. In that case, that you had the professors trying to establish basically a positive right of forcing the employer to have to listen to them and basically a seat at the bargaining table. And what night did, what, I see my time's up, may I? You can finish the answer. And so what night did was to say that you don't have that right to force your way to the bargaining table. But night, I don't think, stands for the proposition that it's just constitutional immunity for any type of violation that could come from the exclusive representation system. With that, Your Honor. Let me just ask, so with that point back to what you were saying earlier, if you were to prevail, your clients aren't seeking to be allowed and required to bargain for themselves. You just want a declaration that they're not part of this unit, but you're not, because you concede that night wouldn't allow them their own access to the bargaining table, right? They cannot force their way to the bargaining table like the exclusive representative can, Your Honor. That's correct. And so they would rather not be spoken for in that way. But what does that mean in practical terms, to not be spoken for? Right. So I think that every public employer has represented bargaining unit folks, and then they have people who are not represented, management, confidential employees, those types of folks. So the system is already there. So what my clients would be wanting to do, step out of the bargaining unit, and then they could be treated just like all of CUNY's employees who aren't in a bargaining unit. The system is already there. This would not cause a hardship on the part of the employer. So they're not in a bargaining unit, but do they have the right to negotiate their own terms? Well, then CUNY would deal with them as like an independent. And if CUNY says, I don't want to deal with you because we have a system and you've opted out, is that a problem under your theory or that's perfectly fine? No, I mean, that's a risk that they would take. There's other employment laws and stuff at play. They still can't be discriminated against for certain things. And in that way, if CUNY did want to negotiate with them independently, they could. Or CUNY could just say, hey, the six of you, you're not in the bargaining unit anymore, but we have this great CBA and all of these terms and conditions apply to you if you want to work here. How is that different than status quo in a practical sense? I don't understand the difference. Because then when PSC is saying we're speaking on behalf of the bargaining unit and the individuals who are in the bargaining unit, they can't, through that way, speak for my clients. And now they can no longer say we speak for all of the professors. Say what they're going to say, and they're going to bargain as they bargain, and your clients get the benefits of that CBA bargain. But something else has happened that distances them from the speech and association? Other than the fact that they don't pay dues, they're not a member of the union, they can speak strongly and critically as they wish against these political views? Well, I think the problem is the state law right now compels them to be a member. Normally in the U.S., when we become a member of a gym or of a club or something like that, you are making that willing decision to be part of that. And so then when, say, your particular organization says we speak for our membership, say like a trade organization, you're willingly part of that. And if they say things that you disagree with and you don't like, you can just step out and say, guess what? I don't want to be part of that anymore. You don't speak for me. Here, the law- They're not made to be part of the union. They're not part of the union. Well, they're not union members, but they are members of the bargaining unit. There's two types of membership in this situation. Membership in the union, membership in the bargaining unit. So when PSC, for instance, says on its website that we speak and represent the entire bargaining unit, all the people in the bargaining unit at CUNY, my clients, by law, are part of that. And so they are saying we speak for my clients. If they can step out of the bargaining unit, though, then when they say we speak for the bargaining unit at CUNY, my clients aren't part of that. They're not compelled to be associated with that. All right. I understand the argument. Anything else from my colleagues? Thank you, Counselor. You have three minutes for rebuttal. And we'll hear first from Mr. Welton. Yes, Your Honor. You may proceed. Thank you, Your Honor. Good morning. May it please the Court. Cleland Welton for the State. Judge Calabresi, you're completely correct. The plaintiff's claim was foreclosed by the Supreme Court's decision- Could you speak a little closer to the mic? I'm sorry. Thank you. Judge Calabresi is completely correct. The plaintiff's claim is foreclosed by the Supreme Court's decision in Knight. As this Court held in Jarvis, and as every one of the 15 other cases on point has held, Knight establishes an exclusive representation statute, like the Taylor Law, does not violate the First Amendment in any way. There's no relevant distinction between this case and Knight. Just as in Knight, the plaintiffs are not required to join the union. They're free to speak for themselves, to express their own views. They're free to associate or not to associate with whoever they want. Given that factual identity, Knight forecloses the plaintiff's First Amendment claims as a basic matter of stare decisis. And Judge Nathan, you're correct that Janus does not change that result. Janus, as every one of the 13 cases decided after Janus, holds that Janus does not change the rule in Knight. Janus holds only that the state cannot require non-union employees to subsidize the union speech by paying the mandatory agency or fair share fees. It was that subsidy that created the First Amendment problem in Janus. When you take that subsidy out, as New York did here after the Janus decision, it's no longer that First Amendment problem. There's only the exclusive representation. Exclusive representation was held constitutional in Knight. That rule remains valid after Janus. It controls this case and it requires affirmation of the judgment. Even if Knight were not controlling, the plaintiffs have not alleged a violation of their First Amendment rights. And that's because a First Amendment freedom of association claim requires not just an allegation of some vague or attenuated form of association like they're asserting here. They have to assert an actual violation of their underlying First Amendment rights. And they have not done that. The Taylor law does not restrict their ability to speak on any topic. Again, it does not compel them to speak. So I suppose that just if you could respond directly to the contention that it requires them to be a member of a bargaining unit represented by an entity that engages in political speech with which they strongly disagree. So what do you say to the contention that being a member of a bargaining unit is a forced association at the very least with that bargaining unit of here 30,000 or so instructors? I would say a couple of things, Your Honor. First, those exact same facts were present in Knight as well. And so Knight forecloses this issue even though they didn't say bargaining unit in that particular way. The association with the union doesn't exist because they've taken themselves out. They're not union members. So there's no association with the union. To the extent that there is an association with the bargaining unit, there's no expressive content there. Being members of the bargaining unit doesn't entail them accepting anything that the union says. They're not members of the union. And the bargaining unit doesn't say anything. So there's no expressive content there. They're not made to speak. The union is a distinct legal entity. It's hard to see how it's different than the law schools in fair. Exactly. They're distinct entities. There's the union, and then there are these plaintiffs. The union speaks for itself. It speaks as a collective whole, expresses the collective official position of the faculty, but it doesn't speak for any individual person, any individual employee. And so there's no compelled speech problem, and there's obviously also no restriction on the plaintiff's ability to speak on any topic. And so for that reason, there's no First Amendment burden. There's no burden on the plaintiff's speech rights. Under Rumsfeld, on Rumsfeld v. Fair, under Knight, the claim is foreclosed, and the judgment should be affirmed. I see my time has expired. Thank you. Thank you. And we'll hear from Mr. Cronlund. Yes, may it please the Court. I'm Scott Cronlund, appearing for the union. We agree with the state that this appeal is controlled by precedent. The district court decision thoroughly explains why, in the absence of any requirement that individual workers join the union, support the union, or do anything else, exclusive representation bargaining by itself doesn't unconstitutionally compel expressive association. Reasonable outsiders would understand that, as in any democratic system, not all CUNY professors agree with each other or with the views of a majority chosen representative about anything. And hence, the union is not speaking for individual professors in the sense that matters for the purposes of the First Amendment, as Judge Barron explained in the Pelt Steel case, which was the most recent challenge to exclusive representation that was decided by a circuit court and as to which the Supreme Court denied cert in June of 2023. The Supreme Court was extremely clear in Janus that it was not questioning fundamental principles of modern labor law, such as exclusive representation that serves as the basis for collective bargaining agreements for millions and millions of employees in the public and private sectors, that states could keep their collective bargaining systems exactly as they are, they just can't force non-members to pay money to support the union's collective bargaining activities. The Supreme Court has denied multiple cert petitions, both before and after Janus on this very issue. The law in this area is settled, as the district court's decision explains, and we would urge this court to adopt it. Let me just ask, to the extent what counsel indicated they're asking for in practicality is not their own seat at the table, because they recognize no matter what they might say about the reach of night, it certainly doesn't give them that. So how then would, I guess they want the court to speak for them and say that they're not part of this speech. How does doing that, limited to that, upset the collective bargaining process? I mean, certainly giving everyone a seat at the table upsets the collective bargaining process. But how does simply declaring them they really mean it when they say they don't have anything to do with this, how does that upset, how does that create a lack of labor peace? Well, two issues. First, the court doesn't need to say that they don't agree with the union. They can say it themselves. They have said it themselves. The union readily concedes that not all of the workers, including all of the union members, necessarily agree with the positions of the union. That's how any democratic system works. Second, what's been suggested is that the union would still bargain a contract and certain people would be outside the unit. There isn't a practical way that that could work with similarly situated employees. If we imagine a system in which the union could negotiate a collective bargaining agreement for its members in which they got more than the non-members, that's the system that would burden First Amendment rights. It would force membership, or at least it would incentivize membership in a way that might be constitutionally problematic. Right. Knight said that the non-members didn't face any pressure to join the union, different from the pressure people in the minority may always feel to join with the majority group. If you had a system in which the union could negotiate better terms for its members, that would be the system that created First Amendment burdens in all likelihood, not the one we have now where the union has a duty of fair representation when it bargains for the entire unit, and individual workers can not be union members yet receive all of the benefits of the collective bargaining agreements. All right. Thank you, counsel. Thank you. We'll hear three minutes of rebuttal. Mr. McGrath. Thank you, Your Honor. Just to address a few points, the First Amendment, there was some mention made that there is no First Amendment violation here, but Janus noted that it's an impingement. Exclusive representation is an impingement. It also noticed that it's a restriction on their First Amendment rights. Even going back to Steele, way back into the 1940s, they recognized that exclusive representation does burden First Amendment rights and impinges them and is a restriction to them. So therefore, no collective bargaining? No collective bargaining at all. You're saying it's inherent and there's a First Amendment violation inherent in it, therefore can't do it? You can have collective bargaining for those who wish to be part of the collective. I think that Woolley has a really good quote on this. It says, The First Amendment protects the rights of individuals to hold a point of view different from the majority and to refuse to foster an idea they find morally objectionable. This underlies our entire culture and structure in our country, to be able to be separate from speech and association you disagree with. The state cannot compel that. Here the law is compelling them to be part of the bargaining unit. I live in Connecticut and I have to live in Connecticut. It seems to me that when Connecticut makes some rules that I disagree with, which I can say I disagree with, what you want us to do is to require a court to say, Yes, though you are there, you don't belong and don't agree. You want to come in and tell that people disagree, disagree, which you always do all the time. I don't see the difference between what you're asking and any number of other situations where I have to belong to something which I disagree with, but don't get a right to have a court to say that that doesn't mean I agree. Well, I think the answer that the appellees say here is that basically, if you're associated and the union is speaking on your behalf, don't worry, just do more speech. And in a way that's almost compelling more speech. So they have compelled speech and association through the exclusive representation, and then they're told, well, don't worry, the cure is to go and say more things. That can't be the answer. And, in fact, that isn't the answer. If you look at a situation, for instance, like- Isn't another answer under the law to vote a different union to represent the bargaining unit? Well, Your Honor, we'd love to go down and make a record on this. They say that they were democratically elected, et cetera, et cetera. We've noted in the complaint that this union was certified to represent this bargaining unit back in, I think, 1972. Back in the 1970s. Very unlikely any of the current professors there in the bargaining unit have ever voted- Oh, I see my time is up, Your Honor. You may finish. Very unlikely any of them have ever actually voted to be represented by this union for the bargaining unit. Okay. Thank you. Thank you, Your Honor. The matter is submitted.